UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | CRIMINAL CASE |
| v. | : | NO.: 2:20-CR-038-SCJ-JCF |
| | : | |
| HOLLIS DEAN GARMON | : | |

### ORDER and FINAL REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion To Dismiss Indictment (Doc. 17) and Motion To Suppress Evidence Seized Pursuant To An Invalid Search Warrant (Doc. 18). For the reasons discussed below, it is **RECOMMENDED** that Defendant's motions be **DENIED**.

### Factual And Procedural Background

On January 3, 2019, law enforcement officers went to 22 Jakes Way, Dahlonega, Georgia to arrest Defendant for probation violation for testing positive for methamphetamine and amphetamine. (Doc. 18 at 1; Doc. 18-1 at 2). At that time Defendant was on probation for aggravated assault, possession of a firearm by a convicted felon, and possession of methamphetamine. (Doc. 18-2 at 5). The officers also had a search warrant authorizing the search of the residence for Defendant and for firearms, issued by a Lumpkin County magistrate judge based on an affidavit submitted by Caleb Poole, a Narcotics Investigator with the Lumpkin County Sheriff's Office. (Doc. 18-2). Defendant was arrested on that

1

date, and during the search of the residence, officers found and seized a glass pipe with methamphetamine residue, a Smith & Wesson .38 revolver, and bullets. (Doc. 18-2 at 9).

In an Indictment filed July 29, 2020, the Government charged Defendant with possession of a firearm by a person previously convicted of an offense punishable by imprisonment for a term exceeding one year, in and affecting interstate and foreign commerce, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). (Doc. 1). Defendant moved to dismiss the Indictment (Doc. 17) and to suppress evidence seized pursuant to the search warrant on January 3, 2019 (Doc. 18).[1] The Government responded to Defendant's motions (Docs. 23, 24), and Defendant replied (Doc. 25, 26). With briefing on Defendant's motions complete, the undersigned now considers their merits.

## Discussion

**I.      Motion To Dismiss Indictment (Doc. 17)**

Defendant is charged with possessing a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). That section provides that "[i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm

---

[1] Defendant also filed a motion to suppress statements (Doc. 16), which has been deferred to the District Judge. (*See* Doc. 19).

or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). Defendant argues that the Court should dismiss the Indictment because: (1) § 922(g)(1) is unconstitutional as applied to him because it "forever prohibits him from owning or possessing any firearm for any purpose whatsoever" in violation of the Second Amendment; (2) § 922(g)(1) is unconstitutional on its face because it "strips all persons convicted of a felony offense from rights guaranteed to them by the Second Amendment"; (3) § 922(g)(1) "violates the Fifth Amendment's equal protection guarantee as applied to fundamental Second Amendment rights"; and (4) § 922(g)(1) exceeds Congress's power under the Commerce Clause and violates the Tenth Amendment. (Doc. 17 at 2-9).

### A. Second Amendment

Relying on the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), Defendant asserts that § 922(g)(1) "forever prohibits him from owning or possessing any firearm for any purpose whatsoever. This permanent abrogation of a constitutional right should not be permitted." (Doc. 17 at 3). Defendant further argues that §922(g)(1) is unconstitutional on its face because it "strips all persons convicted of a felony offense from rights guaranteed to them by the Second Amendment" without sufficient government justification to

withstand strict or intermediate scrutiny. (Doc. 17 at 4). Defendant's arguments are unsupported by *Heller* and foreclosed by binding Eleventh Circuit precedent.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend II. In *Heller*, the Supreme Court held that the District of Columbia's "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." 554 U.S. at 635. The Court directed that, "[a]ssuming . . . Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home." *Id.* The Court qualified, however, the right secured by the Second Amendment:

> Like most rights, the right secured by the *Second Amendment* is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose . . . . Although we do not undertake an exhaustive historical analysis today of the full scope of the *Second Amendment*, nothing in our opinion should be taken to cast doubt on *longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 626-27 (citations omitted) (emphasis added). The Court reiterated that qualification in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010): "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill, [and other restrictions].' We repeat those assurances here." *Id.* at 3047 (quoting *Heller*).

Defendant acknowledges the Supreme Court's "implicit approval" of prohibitions on the possession of firearms by convicted felons, but he asserts that the Court "did not directly address whether those provisions should be upheld and the aforementioned assertion is only dicta." (Doc. 17 at 2). The Supreme Court has not, however, found § 922(g)(1) unconstitutional, and the Eleventh Circuit has held that "statutory restrictions of firearm possession, such as § 922(g)(1), are a constitutional avenue to restrict the Second Amendment right of certain classes of people." *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010), *cert. denied*, 560 U.S. 958 (2010). In reaching that conclusion, the court explained:

> When issuing its ruling and settling the actual case and controversy at issue, *Heller* stated, "[a]ssuming that Heller *is not disqualified* from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home." [554 U.S. at 635] (emphasis added). This indicates that the first question to be asked is . . . whether one is *qualified* to possess a firearm. In Rozier's case, the most relevant modifier, as to the question of qualification, is "felon."

5

*Id.* at 770. The court further observed that the Supreme Court suggested in *Heller* that "statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id.* at 771. The court found "the motive behind Rozier's possession of the handgun is irrelevant" and held "18 U.S.C. § 922(g)(1) to be constitutional, even if a felon possesses a firearm purely for self-defense." *Id.* at 770. Following its decision in *Rozier*, the Eleventh Circuit has repeatedly rejected defendants' *Heller*-based challenges to the constitutionality of 18 U.S.C. § 922(g)(1). *See, e.g., United States v. Reverio*, 551 Fed. Appx. 552, 553 (11th Cir. 2014); *United States v. Theramene*, 517 Fed. Appx. 789, 802 (11th Cir. Apr. 23, 2013); *United States v. Baird*, 514 Fed. Appx. 898, 901-02 (11th Cir. Mar. 27, 2013); *United States v. Bernall*, 417 Fed. Appx. 865, 866 (11th Cir. 2011); *United States v. Nicoll*, 400 Fed. Appx. 468, 471-72 (11th Cir. 2010); *United States v. Thornton*, 395 Fed. Appx. 574, 576-77 (11th Cir. 2010); *United States v. Feaster*, 394 Fed. Appx. 561, 564-65 (11th Cir. 2010).

Thus, Defendant's Second Amendment challenge to 18 U.S.C. § 922(g)(1) fails.

**B.**     **Fifth Amendment**

Defendant contends that without the relief provided by 18 U.S.C. § 925(c), "a provision that provided for discretionary relief from firearm prohibitions" that has been unfunded since 1992, "or a presidential pardon, there is no way for

someone convicted of a felony to regain their right to possess firearms even if they are a law-abiding citizen." (Doc. 17 at 5). Thus, Defendant argues, "§ 922 operates as a permanent ban on the fundamental right to bear arms and in the absence of the right to regain those rights, also violates the Due Process Clause." (*Id*). Defendant further argues that "because many states have schemes that allow felons to regain their right to bear arms, the absence of a parallel scheme in the federal system violates the Fifth Amendment's equal protection guarantee as applied to fundamental Second Amendment rights." (*Id*.). The undersigned rejects those arguments.

First, as to Plaintiff's due process argument, 18 U.S.C. § 921 defines "crime punishable by imprisonment for a term exceeding one year":

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). Thus, as the Government asserts, "there are avenues by which a felon can regain the right to possess a firearm absent a presidential pardon." (Doc. 9 at 24).

Defendant also argues that "because many states have schemes that allow felons to regain their right to bear arms, the absence of a parallel scheme in the

7

federal system violates the Fifth Amendment's equal protection guarantee as applied to fundamental Second Amendment rights." (Doc. 17 at 5). Although it does not appear that the Eleventh Circuit has squarely addressed this argument, other courts have rejected similar equal protection challenges to § 922(g)(1). *See, e.g.*, *United States v. Daniels*, No. 13-cr-00523-WHO, 2015 U.S. Dist. LEXIS 51084, at *27-28 (N.D. Cal. Apr. 16, 2015) (rejecting defendant's argument that "§922(g)(1) violates his right to Equal Protection because the exceptions based on pardons, expungement, or restoration of civil rights vary between the states" (collecting cases)); *United States v. Kirkpatrick*, No. 3:11-cr-34, 2011 U.S. Dist. LEXIS 82801, at *13-14 (W.D.N.C. July 27, 2011) (rejecting defendant's argument that §922(g)(1) violates the Equal Protection clause "because it inconsistently restores to some felons the right to bear arms by incorporating disparate state laws"); *United States v. Hill*, No. 10-20048-01-CM, 2010 U.S. Dist. LEXIS 86111, at *4, 7-8 (D. Kan. Aug. 17, 2010) (rejecting defendant's argument that § 922(g)(1) violates the Equal Protection clause because it "relies on diverse state definitions of felonies . . . and contains no uniform definition of the conduct that will result in a loss of the right to possess firearms under federal law"); *United States v. Jones*, 673 F. Supp. 2d 1347, 1355-56 (N.D. Ga. 2009) (rejecting equal protection challenge to § 922(g)(1) premised on arguments that statute relies on "diverse state definitions" of "the conduct that will result in a loss of the right to

possess firearms under federal law" and "inconsistently restores the right to bear arms by incorporating varying state restoration schemes"), *adopted by* 673 F. Supp. 2d 1347, 1348 (N.D. Ga. 2009); *NAGE, Inc. v. Barrett*, 968 F. Supp. 1564, 1574 (N.D. Ga. 1997) (explaining that "courts have rejected equal protection challenges to the gun control laws that rest on anomalies resulting from differing state regimens" concerning restoration of civil rights (collecting cases)). Based on the persuasive authority provided by these cases, the undersigned finds that § 922(g)(1) does not violate the Fifth Amendment and rejects Defendant's arguments to the contrary.

### C.     Commerce Clause And Tenth Amendment

Relying on *United States v. Lopez*, 514 U.S. 549 (1995), Defendant argues that § 922(g)(1) "is unconstitutional, facially and as applied, because it exceeds Congress's authority under the Commerce Clause" because "Congress's Commerce Clause powers do not allow it to criminalize the purely intrastate possession of a firearm simply because the firearm crossed state lines at some point in the past with no connection to the person charged." (Doc. 17 at 7-8). Defendant also argues that "Congress's regulation of intrastate possession of firearms[] implicates the Tenth Amendment, which provides that '[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.' " (*Id*. at 9 (quoting U.S.

9

Const. Amend. X)). Defendant's arguments are foreclosed by Eleventh Circuit authority. *See, e.g.*, *United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011) ("We have repeatedly held that Section 922(g)(1) is not a facially unconstitutional exercise of Congress's power under the Commerce Clause because it contains an express jurisdictional requirement" which "is satisfied when the firearm in question has a 'minimal nexus' to interstate commerce."); *see also United States v. Moody*, 555 Fed. Appx. 867, 868 (11th Cir. 2014) ("Since *Lopez*, we have continually held that § 922(g) is not a facially unconstitutional exercise of Congress's Commerce Clause power because unlike the statute at issue in *Lopez*, § 922(g) contains a jurisdictional requirement."). In *United States v. Thrower*, 524 Fed. Appx. 579 (11th Cir. 2013), the court also rejected the defendant's argument that § 922(g)(1) violates the Tenth Amendment: "With respect to the Tenth Amendment, we have held that Congress does not violate the Tenth Amendment when it enacts legislation through the constitutionally permissible exercise of its Commerce Clause power." *Id.* at 581 (citing *Cheffer v. Reno*, 55 F.3d 1517, 1521 (11th Cir. 1995) and *Hiley v. Barrett*, 155 F.3d 1276, 1277 (11th Cir. 1998)); *see also Reverio*, 551 Fed. Appx. at 553 (noting that defendant's arguments that §922(g)(1) violated the Tenth Amendment by infringing on police power reserved to the states and that Congress exceeded its Commerce Clause power by enacting § 922(g)(1) were "foreclosed by our precedents" (listing cases)).

Accordingly, Defendant has not shown that 18 U.S.C. § 922(g)(1) is unconstitutional, as applied or on its face, on any of the grounds advanced by Defendant in his motion to dismiss. The undersigned therefore **RECOMMENDS** that Defendant's motion to dismiss (Doc. 17) be **DENIED**.

## II.     Motion To Suppress (Doc. 18)

Defendant argues that evidence seized pursuant to the search warrant at issue should be suppressed because (1) the warrant was unsupported by probable cause; and (2) the warrant was issued based on stale information. (Doc. 18).

### A.     Applicable Standards

"Where a search is conducted under the authority of a warrant, the defendant challenging the search carries the burden of showing the warrant to be invalid." *United States v. Kilgore*, 2012 U.S. Dist. LEXIS 154148, at *14 (N.D. Ga. Sept. 13, 2012) (internal quotation omitted), *adopted by* 2012 U.S. Dist. LEXIS 153867 (N.D. Ga. Oct. 26, 2012). "It is not easy for a Defendant to meet this burden, and a judicial preference is accorded searches under a warrant." *United States v. Teague*, No. 2:10-CR-006-RWS-SSC, 2010 U.S. Dist. LEXIS 142717, at *86 (N.D. Ga. Nov. 22, 2010) (internal quotation omitted), *adopted by* 2011 U.S. Dist. LEXIS 42260 (N.D. Ga. Nov. 22, 2010). "The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty." *L.A. County v. Rettele*, 550 U.S. 609, 615 (2007). The task of a magistrate judge, when issuing

a warrant, " 'is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The *Miller* court explained the role of a court reviewing a search warrant:

> Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrate[ judges] in their probable cause determinations.

*Miller*, 24 F.3d at 1361 (citing *Gates*, 462 U.S. at 236-37).

"[P]robable cause must exist when the magistrate judge issues the search warrant." *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994). Therefore, "the information supporting . . . the [G]overnment's application for a search warrant must be timely." *Id.*; *see also United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002) ("The information in the affidavit must also be fresh."). There is no rule that sets out "arbitrary time limitations for presenting information to a magistrate." *Harris*, 20 F.3d at 450. Rather, courts review staleness challenges on a "case-by-case" basis, taking into consideration "the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy),

12

habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Id.*

### B. Analysis

Investigator Poole stated the following in his affidavit in support of the search warrant application: On October 22, 2010, Defendant "was shot by Forsyth County sheriff's office [sic] after threatening law enforcement officers with a firearm." (Doc. 18-2 at 5). Defendant "was later sentenced and placed on probation for Aggravated assault on a Peace officer, Possession of firearm by a convicted felon, and possession of methamphetamine." (*Id.*). On April 27, 2018 Forsyth County Judge David Dickinson signed an arrest warrant for Defendant for probation violation. (*Id.*). On June 13, 2018, Georgia State Probation Officer Shannon Hilliard sent an email to the Forsyth County Sheriff's Office stating that "family members have disclosed that Garmon carries 2 handguns with ammunition at all times. The family members went on to say that he is currently using methamphetamine and has stated that he is not going back to prison." (*Id.*). In August 2018, United States Marshal's Task Force Officer Clint Thaxton "began working Hollis as a fugitive" and discovered through an interview with Defendant's girlfriend Sonja Pace that Defendant was driving a gold 1999 Chevrolet S-10, Georgia license plate RMV2374, registered to Ms. Pace. (*Id.*). Thaxton also discovered that a silver 2014 GMC Terrain, Georgia license plate

13

REK6887, was registered to both Defendant and Ms. Pace. (*Id*. at 5-6). On December 22, 2018, a confidential source ("CS") with "established close ties" to Defendant reported that Defendant and Ms. Pace were living in a mobile home off Oak Grove Road in Lumpkin County, Georgia. (*Id*. at 6). Defendant was observed driving the Chevrolet S-10 on December 31, 2018. (*Id*.). On January 3, 2019[2] TFO Thaxton and Investigator Poole went to 22 Jakes Way, Dahlonega, Georgia, where Poole identified both of Defendant's vehicles, and the address matched the description provided by the CS. (*Id*.).

Defendant argues that suppression is required because the search warrant was not issued on probable cause because "the affidavit in support of the search warrant failed to establish the veracity and reliability of the informants," i.e., the unidentified family members, and "included stale information," i.e., information about Defendant's firearms that was at least 7 months old. (Doc. 18 at 3-7). It is not necessary to determine whether Investigator Poole's affidavit established the existence of probable cause to believe that evidence of a crime would be found at Defendant's residence, however, because the good faith exception to the exclusionary rule set out in *United States v. Leon*, 468 U.S. 897 (1984) applies in this case. *See, e.g., United States v. Jones*, 149 F. Appx 954, 963 (11th Cir. 2005)

---

[2] The affidavit says "January 3, 2018," but that is clearly a typographical error given the chronology laid out in the affidavit, and January 3, 2019 is the date Poole applied for the search warrant.

14

(unpublished decision) ("We need not determine whether probable cause existed, because the good faith exception applies here."); *United States v. Dos Santos*, No. 1:05-CR-613-TWT, 2006 U.S. Dist. LEXIS 55943, at *15 (N.D. Ga. June 21, 2006) ("The good faith exception is applicable to this case; therefore, this court need not reach the underlying issue of probable cause."), *adopted by* 2006 U.S. Dist. LEXIS 55944 (N.D. Ga. July 25, 2006).

The exclusionary rule, which provides that evidence seized as the result of a search violative of the Fourth Amendment may not be used by the Government in a subsequent criminal prosecution, is " 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " *Martin*, 297 F.3d at 1312 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). In *Herring v. United States*, 555 U.S. 135 (2009), the Supreme Court addressed the limited role of the exclusionary rule:

> The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies. *Illinois v. Gates*, 462 U.S. 213, 223[] (1983). Indeed, exclusion "has always been our last resort, not our first impulse," *Hudson v. Michigan*, 547 U.S. 586, 591[] (2006), and our precedents establish important principles that constrain application of the exclusionary rule.

*Id.* at 140. The Court explained that "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice

15

system." *Id.* at 144. The purpose of the exclusionary rule is "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.*

In *Leon*, the Supreme Court modified the exclusionary rule to allow prosecutors to use evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 468 U.S. at 900. In *Martin*, the Eleventh Circuit Court of Appeals explained what has become known as the *Leon* good faith exception to the exclusionary rule:

> [*Leon*] stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. The *Leon* good faith exception applies in all but four limited sets of circumstances. *Id.* at 923. The four sets of circumstances are as follows: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319[] (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id.* (internal quotation marks omitted).

*Martin*, 297 F.3d at 1313 (original formatting altered).

The first, second and fourth circumstances are not present here—there is no evidence that the issuing judge was misled by false information or that the issuing judge abandoned his or her judicial role in issuing the warrant, and the warrant sufficiently describes the person, premises, and property to be searched, and the things to be seized. Rather, Defendant's arguments in support of suppression implicate the third circumstances described in *Leon*—that the affidavit was so lacking in indicia of probable cause to believe that evidence of a crime would be found at Defendant's residence that official belief in its existence was unreasonable.

The undersigned finds that the information set forth in Investigator Poole's affidavit shows that it was not so "lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Martin*, 297 F.3d at 1313. According to the affidavit, Plaintiff was a convicted felon who had already been convicted of possession of a firearm by a convicted felon when he violated the terms of his probation, and more than one of Defendant's family members reported to his probation officer that he keeps two handguns with ammunition with him "at all times," that he uses methamphetamine, and he has "stated that he is not going back to prison." (Doc. 18-2 at 5-6). Thus, the affidavit shows that persons close to Defendant, i.e., his family members, had reported to Defendant's probation officer their specific observations of Defendant with two firearms and ammunition and his

drug use—consistent with the offenses for which he was on probation—as well as his statement about not going back to prison.  As the Government contends, "it would have been reasonable for the magistrate to infer that more than one family member personally observed Garmon with guns on more than one occasion and personally spoke to him." (Doc. 23 at 7).

The affidavit also set forth the facts to support a reasonable belief that Defendant was presently located at the address that was the subject of the search warrant, and based on his family members' reports that his firearms were with him "at all times,"  it was reasonable to believe that firearms would be found at the subject location.  Moreover, firearms are not consumable and are commonly stored in a person's residence, therefore the information provided by the family members was not stale as Defendant asserts.  *See, e.g.*, *United States v. Piloto*, 562 Fed. Appx. 907, 913 (11th Cir. 2014) (finding that 13-month old information about firearm was not stale because "[u]nlawful possession of a firearm is an ongoing crime, so 'old' information is relevant to the question of present probable cause. Additionally, unlike narcotics, firearms are not consumable items; it would be reasonable to believe that Piloto continued to possess his gun in his home for at least 13 months."); *United States v. Deering*, 296 Fed. Appx. 894, 898 (11th Cir. 2008) (explaining that "common sense suggests that firearms, unlike drugs, are generally not items that are dispersed quickly, particularly when multiple firearms

18

are possessed in the residence for personal use"). The undersigned finds that the affidavit was not so "lacking in indicia of probable cause as to render official belief" that firearms would be found at the subject location to be "entirely unreasonable." *Martin*, 297 F.3d at 1313. It was not unreasonable for Investigator Poole "to believe that what he wrote in the affidavit would be sufficient to support a finding of probable cause," nor was it unreasonable for the agents executing the warrant to believe that it was supported by probable cause. *Martin*, 297 F.3d at 1315. Rather, "[t]he affidavit contained sufficient indicia of probable cause to enable a reasonable officer to execute the warrant thinking it valid." *Id.*

Defendant has not shown that any of the circumstances described in *Leon* have been met here. Moreover, there is no evidence that Investigator Poole's conduct in seeking the warrant or the agents' conduct in executing the warrant was "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. Nor is there evidence that the agents engaged in "deliberate, reckless, or grossly negligent conduct," such that exclusion of the evidence seized is warranted. *Id.* It is therefore **RECOMMENDED** that Defendant's motion to suppress evidence (Doc. 18) be **DENIED**.

## Summary

It is **RECOMMENDED** that Defendant's Motion To Dismiss Indictment (Doc. 17) and Motion To Suppress Evidence Seized Pursuant To An Invalid Search Warrant (Doc. 18) be **DENIED**.

**IT IS FURTHER ORDERED** that, subject to a ruling by the District Judge on any objections to orders or recommendations of the undersigned Magistrate Judge, this case is **CERTIFIED READY FOR TRIAL**.

**IT IS SO ORDERED, REPORTED AND RECOMMENDED** this 19th day of March, 2021.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge